JOHN W. STURGEON, Appellant, v. ALFRED P. MERRITT, Respondent.

St. Louis Court of Appeals, April 5, 1892.

**Stallions:** CONSTRUCTION AND EFFECT OF CONTRACT FOR SERVICES. The statute in regard to the publication of the terms for the service of a stallion (R. S. 1889, sec. 6732) does not invalidate a contract fixing the amount of the charges for such services; it applies only in the absence of a special agreement in relation to the amount of such charges. A contract of that character is construed in this cause.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Barker & Shackelford*, for appellant.

*Sol. Hughlett*, for respondent.

BIGGS, J.—The plaintiff sues the defendant for the services of a stallion. The action originated before a justice of the peace, where the plaintiff had judgment, but on appeal to the circuit court he was defeated in the action. He brings the case to this court by appeal, and insists that the judgment must be reversed by reason of errors in the court's instructions.

It is admitted that the plaintiff's stallion in the spring of 1890 served a mare belonging to the defendant. The advertised terms for the horse were: "$10 to insure a mare with foal, money due when the fact is ascertained, or mare parted with or moved out of the immediate neighborhood; $12 to insure a colt to stand and suck, money due when the colt stands and sucks, or when the mare is moved or parted with." The

plaintiff's testimony tended to prove that the contract
with the defendant in respect of his mare was under the
last clause; and that, about three or four months after
the mare was bred, defendant sold her to one White.
The defendant's evidence tended to prove that he had
a special contract with the plaintiff, by which the
money was not to be due and payable until the colt was
foaled, and then only in case it stood up and sucked;
that in August, after the breeding season was over, it
became evident that the mare was not in foal, and that
he (defendant) sold the mare to White and the plaintiff,
who were partners in the purchase of horses, and that
he notified the plaintiff at the time of the sale that
the mare was not in foal. The defendant also intro-
duced evidence strongly tending to prove that the mare
was not in foal. All this evidence was admitted without
objection.

Upon this proof the court instructed the jury as
follows: "1. The court instructs the jury that in
this case the burden of proof rests upon the plaintiff to
show, to the reasonable satisfaction of the jury from
the weight of the evidence, that defendant agreed to
pay plaintiff the sum of $12 for the service of plaintiff's
horse to the defendant's mare, to be due when the colt
should stand and suck, or defendant should part with
the mare or permit her to be moved permanently out of
the immediate neighborhood; and that plaintiff's horse
served the mare, and *that, before it could be certainly
known whether the mare was with foal or not, the defend-
ant without the consent of plaintiff sold said mare;* and, if
such facts be so proved, the verdict will be for the
plaintiff for the sum of $12, with six-per-cent. interest
thereon from the twenty-second day of November, 1890,
up to this date; but, on the other hand, if the defend-
ant has not by the weight of evidence proved the facts

as above stated, or if the jury believe from the evidence that the contract between plaintiff and defendant was that defendant was to pay for the service of the horse only in event that the mare should become with foal, and that the foal should be delivered and stand up and suck, and that the mare did not become with foal by the said horse, then the verdict will be for the defendant.

"2. The court further instructs the jury that, if they believe there was no special contract (and the burden of showing this rests upon the defendant), made by the parties in regard to breeding said mare, then the printed notice of plaintiff stating the terms upon which he would stand the horse, as read in evidence, must be considered by the jury as the contract between the plaintiff and defendant in regard to the service of plaintiff's horse to defendant's mare."

The plaintiff's first objection is directed against that part of the first instruction in italics. Under the plaintiff's idea of the contract the defendant, by selling the mare before the expiration of the time for the delivery of a foal, made himself liable for the season of the mare, whether she was in foal or not. This is a strained and unreasonable construction. We think that the court's view was a proper one. After it became reasonably certain that the animal was not in foal, the defendant had a right to sell her without incurring an absolute liability under the contract.

Objection is made to the latter portion of the first instruction, and also to the second instruction, upon the theory that there could be no contract different from the advertised terms. This position is supposed to find support in the following section of the statute:

"Sec. 6732. *Owner to advertise terms—publication imparts notice.* The owner or keeper of any stallion, jack or bull may advertise the terms upon which he will let

any such animal to service, by publication thereof. in some newspaper of the county where such animal is kept, for sixty days during the season of each year, or by printed handbills conspicuously posted during such period, in four or more public places in said county, including the place where such animal is kept; and publication or posting as aforesaid of the terms of such service shall impart notice thereof to the owner of any female animal served by such stallion, jack or bull during any such season; and, in all actions and controversies in respect to the foal or other product of such service, the owner of such female animal so served shall be deemed to have accepted and assented to said terms, when so advertised and published or posted as provided herein."

The object and meaning of the foregoing section are misconceived by the plaintiff's counsel. The legislature only intended to make the advertised terms conclusive between the parties in the absence of a special agreement to the contrary. It was not intended to take away or abridge the right to make a different contract.

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concur.